**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

**JOHN ALCODRAY**,

                Plaintiff,

vs.

**MICHIGAN DEPARTMENT**
**OF CORRECTIONS** and
**SHERMAN CAMPBELL,**
in his individual capacity,

            Defendants.

Case No.

Hon.
Mag.

_____/

Hannah R. Fielstra (P82101)
Kevin Ernst (P44223)
ERNST LAW FIRM, PLC
*Attorney for Plaintiffs*
645 Griswold, Ste. 4100
Detroit, MI 48226
(313) 965-5555
hannah@ernstlawplc.com

_____/

**COMPLAINT AND JURY DEMAND**

Plaintiff JOHN ALCODRAY, by and through counsel Ernst Law Firm, PLC, states

as follows for his Complaint against the above-named Defendants:

**JURISDICTION AND VENUE**

1.     Plaintiff John Alcodray is a 63-year old Lebanese male who resides in

Adrian, Michigan, within the Eastern District of Michigan.

2.     Defendant, Michigan Department of Corrections ("MDOC"), is a Michigan governmental agency that has at relevant times employed Plaintiff in Adrian, Michigan.

3.     Defendant Sherman Campbell was the Warden and supervisor at the facility to which Plaintiff was assigned in Adrian, Michigan.  He is being sued in his individual capacity for actions he took while acting in his individual capacity.

4.     The transactions and occurrences giving rise to this action took place in the Eastern District of Michigan.

5.     The amount in controversy greatly exceeds this Court's jurisdictional requirement.

6.     The Plaintiff brings this matter after exhausting his remedies with the EEOC, with the matter being closed as of May 6, 2025.

7.     This cause of action involves violations of Plaintiff's civil rights, as secured by the United States Constitution, and is brought pursuant to Title VII of the Civil Rights Acts of 1964.

## FACTUAL ALLEGATIONS

8.     Plaintiff, by reference, incorporates the preceding paragraphs as though fully set forth herein.

9.     Plaintiff John Alcodray is a 63-year-old Lebanese man who is employed by the Michigan Department of Corrections at the Gus Harrison

Correctional Facility in Adrian, Michigan.

10.     After extensive experience in corrections in Connecticut, Mr. Alcodray moved to Michigan and held several roles in food services, including at Huron Valley Correctional Facility and Gus Harrison. Many of these roles were supervisory.

11.     After holding a food service supervisor role at Gus Harrison Correctional Facility, food services became privatized, and Mr. Alcodray decided to become a corrections officer.  He completed the Academy at the age of 52.

12.     During his time with the Michigan Department of Corrections, Mr. Alcodray never had a bad evaluation.

13.     During his time working at Gus Harrison, Mr. Alcodray had only applied for one other position in the prison, as a food assistant, in approximately 2020. He was asked to interview, but Defendant Campbell would not initially let him interview, telling him that he would stay a corrections officer.  Eventually, Mr. Alcodray interviewed, was offered the position, and accepted the job.  When he went to turn in his uniform to Defendant Campbell, Campbell told Mr. Alcodray that they rescinded the offer.   Mr. Alcodray filed a grievance, which began the ongoing retaliation and harassment from Defendant Campbell. In an attempt to stop the harassment, Mr. Alcodray withdrew his grievance, but the harassment from Campbell continued.

14.     Due to the increase in mandated overtime and physical nature of the corrections officer job, Mr. Alcodray decided to apply for another position – an open storekeeper position at Gus Harrison – in approximately March of 2024.

15.     Mr. Alcodray had 22 years of previous experience consistent with the job requirements for the storekeeper position while he was in the Navy, at his previous jobs in corrections in Connecticut, in the private sector, and in other roles he has held at Gus Harrison, including experience with storage and doing mail in positions as a corrections officer and a food service supervisor.  Additionally, he worked with the storekeepers daily.

16.     After submitting his first application, he was told that he did not qualify for the position.  The position was not filled, so it was reposted.

17.     Because preference is given to veterans and Mr. Alcodray met the qualifications for the position, he reapplied in approximately March of 2024, as he was not sure if his veteran status had been considered.

18.     Mr. Alcodray sought to update his application to include specific information about how he met the qualifications for the position and ensure that his military information was received.

19.     He was not allowed by the MDOC to update his application because he was told it looked like he was falsifying information.

20.     Again, Mr. Alcodray was not even given an interview for the position.

21.     On March 20, 2024, Mr. Alcodray reached out to a business manager within the Department inquiring as to how he allegedly did not meet the qualifications for these positions, as he believed he did.  He explained that he has been denied for these positions and has not received any promotions.  He further stated he would be filing a FOIA request, in addition to an EEO complaint, as he believed he was possibly being discriminated against.

22.     He continued to apply for other open storekeeper positions at different prisons and other positions at Gus Harrison.

23.     Mr. Alcodray then applied for an open storekeeper position – nearly identical to the open position he previously applied for at Gus Harrison – in the Jackson facility, a position for which he was also qualified.  Not a single person there said he was not qualified and he was at least given an interview, then Defendant Campbell learned that he applied.  Mr. Alcodray was the most senior person with the most experience.  After Campbell learned he applied, Mr. Alcodray was not offered the job.  He has a reasonable belief that Defendant Campbell interfered with his ability to get the job.

24.     Mr. Alcodray also applied for an open storekeeper position – nearly identical to the open position he previously applied for at Gus Harrison – with Women's Huron Valley Correctional Facility.  Not a single person there said he was

not qualified and he was at least given an interview.  Mr. Alcodray did not get the job.

25.     Additionally, Mr. Alcodray applied for another food service position at Gus Harrison.  He qualified, was interviewed, and was not given the job.

26.     Mr. Alcodray was *asked* to apply to an additional food service position at Gus Harrison.  He did not get that job, even after being asked.

27.      Defendant Campbell told Mr. Alcodray to stop applying for the positions and that he would never get the job.

28.     The storekeeper position at Gus Harrison remains open and Mr. Alcodray still has not been allowed to interview.

29.     On one occasion, Mr. Alcodray approached Defendant Campbell and asked if it was because he was Lebanese.

30.     Upon information and belief, Defendant Campbell had never told a non-Arab or younger employee to stop applying for a position.  His statements to Mr. Alcodray in light of his past conduct make it clear that due to Mr. Alcodray's national origin and age, he did not want him to apply for other jobs for which he is qualified.

31.     Mr. Alcodray was repeatedly assigned to the yard, an objectively undesirable position in the prison.  He was the oldest corrections officer assigned to the yard consistently.  Other officers rotated in their positions.

32.     Mr. Alcodray is sent for drug tests more frequently than other corrections officers and mandated more often than other non-Arab and younger employees.

33.     Defendant Campbell continued to harass Mr. Alcodray and called him names, including but not limited to a "bully."

34.     The MDOC has a history of treating its Arab and older employees differently from non-Arab and younger employees, subjecting them to discriminatory treatment, retaliation and creating a hostile working environment.

35.     Because of Defendants' conduct in refusing to allow him to interview for positions, denying him positions for which he is qualified, denying him promotions and subjecting him to discrimination, a hostile work environment, and retaliation, Mr. Alcodray took a stress leave.

36.     Had he not been subjected to the discrimination, hostility, and retaliation, he would not have taken a stress leave.

37.     Mr. Alcodray planned to retire from the MDOC and has years of productive work ahead of him.  However, while on stress leave, he continues to lose pay and seniority.

38.     As a result of Defendant's actions Plaintiff has suffered, and will continue to suffer, including but not limited to the following:

        a.      Stress;

b.    Anxiety;

c.    Depression;

d.    Lost Wages;

e.    Humiliation;

f.    Non-economic damages;

g.    Economic damages;

h.    Attorney Fees and costs;

i.    All other injuries to be discovered throughout discovery.

### COUNT I
### TITLE VII OF THE CIVIL RIGHTS ACT OF 1964 – 42 U.S.C. § 2000e-2
*Retaliation – As to Defendant MDOC*

33.    Plaintiff, by reference, incorporates the preceding paragraphs of his Complaint as though fully set forth herein.

34.    Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.* prohibits discrimination and retaliation against any individual with respect to compensation, terms, conditions, or privileges of employment because of such individual's national origin and age.

35.    At all material times, Plaintiff has been an employee of Defendant employer, the Michigan Department of Corrections, covered by and within the meaning of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2.

8

36.    Plaintiff is a 63-year-old Arab man of Lebanese decent, in the minority at the Michigan Department of Corrections, where Plaintiff was employed, and a member of a protected class under Title VII of the Civil Rights Act of 1964.

37.    As an employer within the meaning of Title VII of the Civil Rights Act of 1964, Defendant Michigan Department of Corrections owed Plaintiff a duty not to discriminate against him with respect to employment, promotional opportunities, compensation, or other conditions or privileges of employment on the basis of Plaintiff's national origin and age.

38.    Because of his national origin and age, Plaintiff was subjected to treatment during his time as an employee for Defendant Michigan Department of Corrections that has been disparate compared to non-Arab and younger co-workers and applicants, who have been treated more favorably than Plaintiff.

39.    As a result of the discrimination on the basis of Plaintiff's national origin and age, Plaintiff was retaliated against by not being considered or allowed to apply/interview for certain positions and not receiving promotions. He was also assigned to objectively unfavorable positions, mandated more often, and sent more frequently for drug testing than other employees.

40.    There is no legitimate business reason justifying the retaliation to which Plaintiff has been subjected during his time as an employee for Defendant Michigan Department of Corrections.

41.     As a direct and proximate result of Defendant Michigan Department of Corrections' unlawful actions against Plaintiff described herein, Plaintiff has suffered injuries and damages, including, but not limited to: potential loss of earnings and earning capacity, loss of career opportunities, loss of reputation and esteem in the community, mental and emotional distress, and loss of ordinary life pleasures.

42.     Pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.,* Defendants are liable to Plaintiff for all damages allowed under Federal Law. To the extent that damages allowable and/or recoverable are deemed insufficient to fully compensate Plaintiff and/or to punish or deter the Defendants, this Court must order additional damages to be allowed so as to satisfy any and all such inadequacies. Defendants' conduct was and remains extreme and outrageous subjecting Defendants to punitive damages.

43.     As a direct and proximate cause of Defendant's unlawful actions, Plaintiff has sustained and continues to sustain injuries and damages.

### COUNT II
### TITLE VII OF THE CIVIL RIGHTS ACT OF 1964 – 42 U.S.C. § 2000e-2
*Disparate Treatment – As to Defendant MDOC*

44.     Plaintiff, by reference, incorporates the preceding paragraphs of his Complaint as though fully set forth herein.

45.    Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.* prohibits discrimination and retaliation against any individual with respect to compensation, terms, conditions, or privileges of employment because of such individual's national origin and age.

46.    At all material times, Plaintiff has been an employee of Defendant employer, MDOC, covered by and within the meaning of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2.

47.    Plaintiff is a 63-year-old Arab man, in the minority at the Michigan Department of Corrections, where Plaintiff was employed, and a member of a protected class under Title VII of the Civil Rights Act of 1964.

48.    As an employer within the meaning of Title VII of the Civil Rights Act of 1964, Defendant Michigan Department of Corrections owed Plaintiff a duty not to discriminate against him with respect to employment, promotional opportunities, compensation, or other conditions or privileges of employment on the basis of Plaintiff's national origin and age.

49.    Because of his national origin and age, Plaintiff was subjected to treatment during his time as an employee for Defendant Michigan Department of Corrections that has been disparate compared to non-Arab, younger co-workers, employees and/or applicants, who have been treated more favorably than Plaintiff.

50.     The disparate and less favorable treatment to which Plaintiff has been subjected during the time that he has been employed by Defendant MDOC has included adverse employment actions as described above on the basis of Plaintiff's national origin and age.

51.     The disparate and less favorable treatment to which Plaintiff has been subjected during the time that he was employed by Defendant MDOC has come from supervisory personnel and other decisionmakers.

52.     Defendant MDOC has a policy or pattern of practice that encourages management, decisionmakers or supervisory personnel to directly discriminate against minority employees, or that tolerates the disparate and less favorable treatment of minority employees by supervisory personnel and other employees.

53.     Defendant MDOC has a policy or pattern of practice that encourages management or supervisory personnel to look the other way or actively encourage disparate and less favorable treatment of minority employees by supervisory personnel, decisionmakers and other employees.

54.     The disparate treatment to which Plaintiff was subjected while he was employed by Defendant MDOC has been so substantially disparate and less favorable than the treatment of non-Arab, younger, and/or non-minority employees that it raises an inference of disparate treatment discrimination.

55.     The disparate treatment to which Plaintiff was subjected while he was employed by Defendant MDOC has been so substantially disparate and less favorable than the treatment of non-Arab, younger and/or non-minority employees that it unreasonably interfered with Plaintiff's work performance.

56.     There is no legitimate business reason justifying the disparate treatment to which Plaintiff was subjected while he was employed by Defendant MDOC.

57.     As a direct and proximate result of Defendant MDOC's unlawful actions against Plaintiff described herein, Plaintiff has suffered injuries and damages, including, but not limited to: potential loss of earnings and earning capacity, loss of career opportunities, loss of reputation and esteem in the community, mental and emotional distress, and loss of ordinary life pleasures.

58.     Pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.,* Defendants are liable to Plaintiff for all damages allowed under Federal Law. To the extent that damages allowable and/or recoverable are deemed insufficient to fully compensate Plaintiff and/or to punish or deter the Defendants, this Court must order additional damages to be allowed so as to satisfy any and all such inadequacies. Defendants' conduct was and remains extreme and outrageous subjecting Defendants to punitive damages.

59.     As a direct and proximate cause of Defendant's unlawful actions, Plaintiff has sustained and continues to sustain injuries and damages.

## COUNT III
## TITLE VII OF THE CIVIL RIGHTS ACT OF 1964 – 42 U.S.C. § 2000e-2
*Hostile Work Environment – As to Defendant MDOC*

60.    Plaintiff, by reference, incorporates the preceding paragraphs of his Complaint as though fully set forth herein.

61.    Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.* prohibits discrimination and retaliation against any individual with respect to compensation, terms, conditions, or privileges of employment because of such individual's national origin and age.

62.    At all material times, Plaintiff has been an employee of Defendant employer, MDOC, covered by and within the meaning of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2.

63.    Plaintiff is a 63-year-old Arab man, in the minority at the Michigan Department of Corrections, where Plaintiff is employed, and a member of a protected class under Title VII of the Civil Rights Act of 1964.

64.    As an employer within the meaning of Title VII of the Civil Rights Act of 1964, Defendant MDOC owed Plaintiff a duty not to discriminate against him with respect to employment, promotional opportunities, compensation, or other conditions or privileges of employment on the basis of Plaintiff's national origin and age.

65.     Because of his national origin and age, Plaintiff was subjected to treatment during his employment for Defendant MDOC that has been disparate compared to non-Arab, younger and/or non-minority co-workers at the facility to which Plaintiff is assigned, applicants, and other employees who have been treated more favorably than Plaintiff.

66.     Defendant MDOC, by and through its agents, representatives, and/or employees, was predisposed to discriminate on the basis of national origin and age, and acted in accordance with that predisposition.

67.     While employed by Defendant MDOC, Plaintiff was repeatedly subjected to national origin and age discrimination by Defendant, by and through its agents, servants and/or employees, said acts being made unlawful by Title VII of the Civil Rights Acts of 1964, 42 U.S.C. § 2000e *et seq.*

68.     Defendants failed to provide a work environment free from national origin, and age discrimination.

69.     Defendants created a hostile work environment on the basis of Plaintiff's national origin and age.

70.     Defendant MDOC has a policy or pattern of practice that encourages management, decisionmakers, or supervisory personnel to directly discriminate against minority employees, or that tolerates the disparate and less favorable treatment of minority employees by supervisory personnel and other employees.

71.     Defendant MDOC has a policy or pattern of practice that encourages management, decisionmakers, or supervisory personnel to look the other way or actively encourage disparate and less favorable treatment of minority employees by supervisory personnel and other employees.

72.     There is no legitimate business reason justifying Defendant's actions, in violation of Title VII, which specifically prohibits discrimination against any person regarding employment and/or the terms of employment on the basis of national origin and age.

73.     Defendant MDOC and its agents, servants and/or employees' actions were intentional, with reckless indifference to Plaintiff's rights and sensibilities.

74.     As a direct and proximate result of Defendant MDOC's unlawful actions against Plaintiff described herein, Plaintiff has suffered injuries and damages, including, but not limited to: potential loss of earnings and earning capacity, loss of career opportunities, loss of reputation and esteem in the community, mental and emotional distress, and loss of ordinary life pleasures.

75.     Pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.,* Defendants are liable to Plaintiff for all damages allowed under Federal Law. To the extent that damages allowable and/or recoverable are deemed insufficient to fully compensate Plaintiff and/or to punish or deter the Defendants, this Court must order additional damages to be allowed so as to satisfy any and all such inadequacies.

Defendants' conduct was and remains extreme and outrageous subjecting Defendants to punitive damages.

76.    As a direct and proximate cause of Defendant's unlawful actions, Plaintiff has sustained and continues to sustain injuries and damages.

## COUNT IV
## VIOLATION OF MICHIGAN'S ELLIOT LARSEN CIVIL RIGHTS ACT
*Retaliation – As to Defendant Campbell*

77.    At all relevant times, Plaintiff was an "employee" and Defendant was "employers" within the meaning of Michigan's Elliott-Larsen Civil Rights Act ("ELCRA"), MCL 37.2101, *et seq.*

78.    Pursuant to ELCRA, supervisors may be held liable. Defendant was a supervisor with authority over Plaintiff.

79.    At all relevant times, under the ELCRA, Plaintiff had a right to employment free from discrimination based on his age and national origin.

80.    Plaintiff's act of filing with the EEOC regarding Defendants' conduct was a protected activity under the ELCRA, in addition to asking Defendant if his actions were because Plaintiff is Lebanese.

81.    Defendant retaliated against Plaintiff by interfering with his job applications, directing Plaintiff not to apply for positions, not fairly considering him for positions, not giving promotions, placing him in objectively undesirable

positions, and sending him for more frequent drug testing, despite Plaintiff's excellent work performance, seniority, and years of qualified experience.

82.     As a direct and proximate result of Defendant's actions, Plaintiff has suffered and continues to suffer damages and injuries, as herein alleged.

**COUNT V**
**VIOLATION OF MICHIGAN ELLIOT-LARSEN CIVIL RIGHTS ACT**
*Disparate Treatment – As to Defendant Campbell*

83.     Plaintiff, by reference, incorporates the preceding paragraphs as though fully set forth herein.

84.     At all relevant times, Plaintiff was an "employee" and Defendants were "employers" within the meaning of Michigan's Elliott-Larsen Civil Rights Act ("ELCRA"), MCL 37.2101, *et seq.*

85.     Pursuant to ELCRA, supervisors may be held liable. Defendant was a supervisor with authority over Plaintiff.

86.     At all relevant times, under the ELCRA, Plaintiff had a right to employment free from discrimination based on his age and national origin.

87.     Defendant was predisposed to discrimination on the basis of age and national origin and acted in accordance with that predisposition.

88.     Defendant treated Plaintiff differently from similarly situated non-Arab and younger employees in the terms and conditions of employment, on the unlawful basis of age and national origin.

18

89.     As a direct and proximate result of Defendants' unlawful actions, Plaintiff has suffered, and continues to suffer, injuries and damages.

## COUNT VI
## VIOLATION OF MICHIGAN ELLIOTT-LARSEN CIVIL RIGHTS ACT
*Hostile Work Environment – As to Defendant Campbell*

90.     Plaintiff, by reference, incorporates the preceding paragraphs as though fully set forth herein.

91.     At all relevant times, Plaintiff was an "employee" and Defendants were "employers" within the meaning of Michigan's Elliott-Larsen Civil Rights Act ("ELCRA"), MCL 37.2101, *et seq.*

92.     Pursuant to ELCRA, supervisors may be held liable. Defendant was a supervisor with authority over Plaintiff.

93.     At all relevant times, under the ELCRA, Plaintiff had a right to employment free from discrimination based on his age and national origin

94.     Plaintiff was treated differently due to his age and national origin.

95.     The Defendant violated Plaintiff's rights under the ELCRA by allowing the unwelcome conduct to affect a term or condition of employment, including interfering with his job applications, directing Plaintiff not to apply for positions, not fairly considering him for positions, not giving promotions, placing him in objectively undesirable positions, and sending him for more frequent drug testing,

despite Plaintiff's excellent work performance, seniority, and years of qualified experience.

96.    As a direct and proximate cause of Defendant's unlawful actions, Plaintiff has sustained and continues to sustain injuries and damages.

WHEREFORE, Plaintiff respectfully requests that this Honorable Court enter judgment in his favor and against Defendants, jointly and severally, in an amount that is fair and reasonable and compensates Plaintiff for his injuries, plus costs, interest, and attorney fees, as well as punitive and/or exemplary damages so wrongfully incurred.

Respectfully submitted,


*/s/ Hannah R. Fielstra*
Hannah R. Fielstra (P82101)
Ernst Law Firm, PLC
Counsel for Plaintiff
645 Griswold Street, Suite 4100
Detroit, Michigan 48226
(313) 965-5555
(313) 965-5556 – Fax
hannah@ernstlawplc.com


Dated: July 14, 2025

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

**JOHN ALCODRAY**,

        Plaintiff,

vs.

**MICHIGAN DEPARTMENT**
**OF CORRECTIONS** and
**SHERMAN CAMPBELL,**
in his individual capacity,

        Defendants.

Case No.

Hon.
Mag.

_____/

Hannah R. Fielstra (P82101)
Kevin Ernst (P44223)
ERNST LAW FIRM, PLC
*Attorney for Plaintiffs*
645 Griswold, Ste. 4100
Detroit, MI 48226
(313) 965-5555
hannah@ernstlawplc.com

_____/

## **DEMAND FOR JURY TRIAL**

      NOW COMES Plaintiff, JOHN ALCODRAY, and demands a jury trial on all

issues so triable.

                           Respectfully submitted,

                           */s/ Hannah R. Fielstra*
                           Hannah R. Fielstra (P82101)
                           Ernst Law Firm, PLC
                           Counsel for Plaintiff

645 Griswold Street, Suite 4100
Detroit, Michigan 48226
(313) 965-5555
(313) 965-5556 – Fax
hannah@ernstlawplc.com

Dated: July 14, 2025