UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JOHN ALCODRAY,

     Plaintiff,

v.

MICHIGAN DEPARTMENT OF
CORRECTIONS and SHERMAN
CAMPBELL,

     Defendants.

Case No. 25-12122
Honorable Laurie J. Michelson

---

**OPINION AND ORDER GRANTING IN PART AND DENYING IN PART
DEFENDANTS' PARTIAL MOTION TO DISMISS [8]**

---

At age 63, John Alcodray has been employed by the Michigan Department of Corrections for many years, first in a food service role and then as a correctional officer. But as he grew tired of the physical demands of being a correctional officer, he looked for a new position at Gus Harrison Correctional Facility and other MDOC prisons. Despite meeting job qualifications, Alcodray, who is Lebanese, says he was repeatedly prevented from obtaining positions as a storekeeper and food service worker. He believes Defendant Sherman Campbell, the warden of Gus Harrison, stifled his job opportunities on account of his age and national origin. So Alcodray filed this lawsuit against Campbell and MDOC bringing discrimination, retaliation, and hostile work environment claims under Title VII and Michigan's Elliot-Larsen Civil Rights Act (ELCRA).

Defendants filed a partial motion to dismiss, arguing that only the Title VII discrimination claim against MDOC based on Alcodray's national origin should remain. Alcodray opposes the motion. The motion is fully briefed and does not require further argument. *See* E.D. Mich. LR 7.1(f)(2).

For the reasons that follow, the Court will GRANT IN PART and DENY IN PART Defendants' partial motion to dismiss (ECF No. 8).

## I.

In deciding a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the Court "construes the complaint in the light most favorable" to Alcodray and determines whether his "complaint 'contain[s] sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" *See Heinrich v. Waiting Angels Adoption Servs., Inc.*, 668 F.3d 393, 403 (6th Cir. 2012) (alteration in original) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). Detailed factual allegations are not required to survive a motion to dismiss, *HDC, LLC v. City of Ann Arbor*, 675 F.3d 608, 614 (6th Cir. 2012), but a complaint must "raise a right to relief above the speculative level," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). What is plausible is "a context-specific task" requiring this Court "to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. With this standard in mind, the Court accepts the following factual allegations as true.

John Alcodray, a 63-year-old Lebanese man, has worked for MDOC for about 15 years. (ECF No. 1.) He started in food service and then moved to food service management before changing course and becoming a corrections officer. (*Id.* at

PageID.3.) But by 2020, the physical demands of being a corrections officer were wearing on him, so he attempted to change his role back to food service or storekeeper. (*Id.*) He applied for, was offered, and accepted a food assistant job at Gus Harrison Correctional Facility. (*Id.*) When he went to turn in his correctional officer uniform, however, Defendant Campbell, the facility's warden, told him that the offer had been rescinded and he would remain a corrections officer. (*Id.*) In response, Alcodray filed a grievance against Campbell, which he later withdrew out of fear that Campbell would continue to quash his job prospects. (*Id.*)

A few years later, in March 2024, Alcodray applied for a storekeeper position at Gus Harrison. (*Id.* at PageID.4.) Despite 22 years of relevant experience, he was told he did not qualify, and his application was rejected without an interview. (*Id.*) Once the job was reposted sometime thereafter, he reapplied, this time adding "specific information about how he met the qualifications . . . ." (*Id.*) But once again, his application was rejected without an interview—and worse, he was told that his application looked like it had been falsified. (*Id.*) Alcodray believed he was being discriminated against, so he filed a FOIA request and a complaint with the Equal Employment Opportunity Commission on December 21, 2024. *(Id.* at PageID.5; ECF No. 8, PageID.59.)

Undeterred, Alcodray applied for a similar storekeeper position at a different MDOC facility in Jackson, Michigan. (*Id.* at PageID.5.) There, he was at least given an interview. (*Id.*) But he says after Campbell learned he had applied, he was not

3

offered the job, despite his strong qualifications and seniority. (*Id.*) He believes Campbell "interfered with his ability to get the job." (*Id.*)

Alcodray kept trying. He applied for a food service position at another MDOC facility, Huron Valley Correctional Facility. (*Id.* at PageID.5–6.) He was given an interview but did not get that job either. (*Id.*) No one told him he was unqualified. (*Id.*)

Then Alcodray applied for another food service role at Gus Harrison. (*Id.* at PageID.6.) More of the same: he applied, was interviewed, and did not get the job. (*Id.*) He was even asked to apply to another position at the prison, but says "even after being asked[,]" he still did not get that job. (*Id.*)

It was at this point that Campbell told him to stop applying for new positions and that he would never get the job. (*Id.*) Alcodray asked Campbell explicitly whether he was being held back from other positions because he was Lebanese. (*Id.*) It is unclear if or how Campbell answered that question. Regardless, Alcodray notes that Campbell "had never told a non-Arab or younger employee to stop applying for a position." (*Id.*) Indeed, the storekeeper position at Gus Harrison that he applied to in March 2024 remains open, and despite his efforts, Alcodray has not received an interview. (*Id.*)

In addition to his thwarted job prospects, Alcodray alleges additional unlawful conduct from MDOC while in his corrections officer role. For one, he felt he was passed over for promotions. (*Id.* at PageID.5.) He also described being consistently assigned to the undesirable role of working the yard, while other officers rotated in

and out of that role more frequently. (*Id.* at PageID.6.) Further, Alcodray says he was sent for drug tests more often than non-Arab and younger correctional officers. (*Id.* at PageID.7.) He also notes that Campbell called him negative names, like "bully." (*Id.*)

All of this, Alcodray believes, shows that MDOC and Campbell are discriminating against him based on his national origin and age, retaliating against him based on his protected conduct, and subjecting him to a hostile work environment. In addition to the monetary impact, he says he has suffered stress, anxiety, depression, and humiliation. (*Id.* at PageID.7–8.) And because of these events, Alcodray took a leave of absence, so he continues to lose pay and seniority. He filed this lawsuit asserting the following claims:

Count I: Title VII retaliation as to Defendant MDOC

Count II: Title VII disparate treatment as to Defendant MDOC

Count III: Title VII hostile work environment as to Defendant MDOC

Count IV: ELCRA retaliation as to Defendant Campbell

Count V: ELCRA disparate treatment as to Defendant Campbell

Count VI: ELCRA hostile work environment as to Defendant Campbell

(*Id.* at PageID.8–20.)

## II. Title VII Claims

This is a partial motion to dismiss. It does not include Count II, alleging Title VII disparate treatment (Count II). The parties also agree to a narrower version of this claim than was initially pled. Because Title VII does not cover age discrimination,

Alcodray's age-related allegations will be dismissed. (ECF No. 8, PageID.52; ECF No. 12, PageID.88 ("Plaintiff concedes that Title VII does not apply to age discrimination claims.").) Defendants also specify, and Alcodray does not contest, that only allegations after February 25, 2024, are timely under Title VII. (ECF No. 8, PageID.56 ("[A]ll of Alcodray's claims that predate February 25, 2024, must be dismissed as they are beyond the statute of limitations for Title VII claims . . . ."; *see* ECF No. 12 (Plaintiff does not contest this in his response).)

The Court turns to the remaining Title VII claims alleging retaliation and hostile work environment (Counts I and III) that Defendants do seek to dismiss.

### A. Exhaustion Requirements

Defendants first assert failure to exhaust administrative remedies.

Before filing suit in federal court, a plaintiff alleging Title VII claims must first exhaust his administrative remedies. This includes filing a charge of discrimination with the EEOC within 300 days of the "alleged unlawful employment practice." 42 U.S.C. § 2000e-5(e)(1). The EEOC will then investigate the charge and notify the plaintiff of his right to bring a civil action. *Id.* § 2000e-5(b), (f)(1).

After receiving the notice, a plaintiff then has 90 days to file his Title VII lawsuit (*id.* § 2000e-5(f)(1)), which can only raise claims that "reasonably relate to or grow out of the facts alleged in his Charge." *Pemberton v. Bell's Brewery, Inc.*, 150 F.4th 751, 762 (6th Cir. 2025); *Younis v. Pinnacle Airlines, Inc.*, 610 F.3d 359, 361 (6th Cir. 2010) ("As a general rule, a Title VII plaintiff cannot bring claims in a lawsuit that were not included in his EEOC charge."); *Spengler v. Worthington*

6

*Cylinders*, 615 F.3d 481, 490 (6th Cir. 2010) (explaining that the Sixth Circuit follows "the 'expected scope of investigation test' and requires a plaintiff to have alleged sufficient facts in his or her EEOC complaint to put the EEOC on notice" of claims he intends to litigate (citation omitted)); *see also Fort Bend County v. Davis*, 587 U.S. 541, 544–45 (2019) (outlining Title VII's administrative exhaustion requirements); *Bell v. Dollar Tree, Inc.*, No. 24-13259, 2025 WL 3252656, at *4–5 (E.D. Mich. Nov. 21, 2025) (same).

As MDOC acknowledges (ECF No. 8, PageID.53), on December 21, 2024, Alcodray filed the following charge of discrimination with the EEOC concerning his employer's misconduct:

> I applied for storekeeper twice at Gus Harrison Facility where I worked and was told I do not qualified [sic] for the position. I applied at Central Office in Jackson with the same qualification I submitted to Gus Harrison Facility and was granted an interview at Central Office Facility. I also applied at Huron Valley Facility and was given an interview for the same job I tried to get at Gus Harrison and they wouldn't even give me a chance to interview. I feel I was discriminate [sic] because of me being the only Lebanese person who worked there at my age. They never gave me a chance.

(ECF No. 8-1, PageID.71.) The charge alleged that the most recent discriminatory action taken by MDOC was on April 15, 2024 (*id.*), and Alcodray's complaint alleges discriminatory actions in March of 2024.[1] (ECF No. 1, PageID.4–5.) Alcodray checked boxes on his EEOC charge that indicated that he believed he was discriminated against due to his race, national origin, and age. (ECF No. 8-1, PageID.71.)

---

[1] As Defendants note (and Plaintiff does not contest), any events occurring before February 25, 2024, fall outside of the 300-day window to file with the EEOC. 42 U.S.C. § 2000e-5(e)(1).

### 1. Retaliation

Alcodray did not, however, check the box for "Retaliation" claim on his charge. (*Id.*) But that omission alone does not end the inquiry of whether the retaliation claim was properly exhausted. Courts in this Circuit look to the facts alleged in the text of the EEOC charge to determine whether a claim of retaliation is within the expected scope of the investigation. *See Dixon v. Ashcroft*, 392 F.3d 212, 217 (6th Cir. 2004) ("[t]he determinative inquiry . . . is whether Dixon alleged sufficient facts in his EEOC Complaint to put the EEOC on notice of his retaliation claim, despite that he did not check the appropriate box on the EEOC's Complaint of Discrimination form"); *Lampkin v. Silver Line Bldg. Prods., LLC*, No. 22-1810, 2025 WL 959451, at *5 (N.D. Ohio Mar. 31, 2025) (finding exhaustion only as to Title VII race discrimination claim and reasoning that although plaintiff "check[ed] both the 'retaliation' and 'race' boxes" in his EEOC charge, plaintiff's charge allegations "would not have 'prompt[ed] the EEOC to investigate' a Title VII retaliation claim" (citation omitted)); *Weigel v. Baptist Hosp. of E. Tenn.*, 302 F.3d 367, 380 (6th Cir. 2002) (recognizing that "where facts related with respect to the charged claim would prompt the EEOC to investigate a different, uncharged claim, the plaintiff is not precluded from bringing suit on that claim." (quoting *Davis v. Sodexho*, 157 F.3d 460, 463 (6th Cir. 1998))).

Thus, the question is whether Alcodray included sufficient information in his EEOC complaint such that the EEOC was on notice of a retaliation claim. To establish a prima facie retaliation claim under Title VII, a plaintiff "must demonstrate that: '(1) he engaged in activity protected by Title VII; (2) his exercise of

such protected activity was known by the defendant; (3) thereafter, the defendant took an action that was 'materially adverse' to the plaintiff; and (4) a causal connection existed between the protected activity and the materially adverse action.'" *Moore v. Coca-Cola Bottling Co. Consol.*, 113 F.4th 608, 627 (6th Cir. 2024) (quoting *Laster v. City of Kalamazoo*, 746 F.3d 714, 730 (6th Cir. 2014)).

The Sixth Circuit has found retaliation claims preserved, despite the absence of a checked retaliation box, where the plaintiff's charge alluded to some type of protected conduct (initial complaint, confronting defendant about age-related comment) and then an adverse employment action (continued discrimination, termination). In *Dixon*, for example, plaintiff's EEOC charge read as follows: "I contend that [defendant Reutter] discriminated against me, causing the bureau to do the same, because of Race, . . . and *because the Applicant Program was removed from his direct supervision because of continued harassment*." 392 F.3d at 217–18 (emphasis in original). Plaintiff went on to describe that "Mr. Davis took over the [Applicant] program after . . . I complained about Reuter's continued harassment." *Id.* at 218. The Sixth Circuit found the retaliation claim fell within the "expected scope of the investigation," despite an unchecked retaliation box, because this EEOC complaint indicated that plaintiff had made an initial complaint of harassment that led to further discrimination. *Id.*

Similarly, in *Spengler*, the Sixth Circuit found a retaliation claim adequately presented, again despite an unchecked retaliation box, because the EEOC charge alleged that the plaintiff was terminated after confronting the defendant about age-

9

related comments. 615 F.3d at 489–90. The *Spengler* EEOC charge stated: "I believe [defendant] resented having to deny making the comment about my age. And after that, [defendant] was clearly not pleased with me. He alone determined that I should bee [sic] terminated. . . . It was clear this was a personal vendetta that could be traced to [defendant's] comment about my age." *Id.* at 490.

Here, by contrast, Alcodray's EEOC charge contains only the adverse employment actions (being denied interviews) but does not mention prior protected activity. His EEOC charge more closely resembles those in *Younis v. Pinnacle Airlines, Inc.*, 610 F.3d 359 (6th Cir. 2010) and *Abeita v. TransAmerica Mailings, Inc.*, 159 F.3d 246 (6th Cir. 1998). In *Younis*, plaintiff did not check the 'Retaliation' box or include anything in the narrative portion of the EEOC charge that could be interpreted as claiming retaliation. 610 F.3d at 363. The *Younis* EEOC complaint stated: "Ultimately, I was discharged for an alleged inability to pass Proficiency Checks. I believe that I have been discriminated against because of my religion (Muslim) and National Origin (Arab) . . . ." EEOC Charge, *Younis v. Pinnacle Airlines, Inc.*, No. 07-2356 (W.D. Tenn. May 28, 2008), ECF No. 38-17. Even construing the *pro se* filing "liberally" 610 F.3d at 362, the court found that the retaliation claim could not "grow out of the factual allegations in the EEOC charge." *Id.* at 362–63.

Likewise, in *Abeita*, the court held that plaintiff's EEOC charge describing gender discrimination did not cover her retaliation claim. 159 F.3d at 254. The *Abeita* EEOC charge read: "During the course of my employment, I was harassed because of my gender and was offered different terms and conditions of employment than were

similarly situated males. I was told that I was being discharged for continuity of management." *Id.* at 254 n.6.

This is precisely the case here. Alcodray's EEOC charge alleges he was blocked from obtaining a different MDOC job because of discrimination, not as retaliation for some prior protected conduct. Because Alcodray neither checked the 'Retaliation' box nor included information in the text of the charge that would put the EEOC on notice of a retaliation claim, the Court finds that Alcodray failed to exhaust his Title VII administrative remedy as to the purported retaliation claim.

### 2. Hostile Work Environment

Alcodray's hostile work environment claim was not adequately presented in the EEOC complaint either. To establish a claim of hostile work environment, "a plaintiff must present evidence of harassment that 'unreasonably interfer[es] with [his] work performance and creat[es] an objectively intimidating, hostile, or offensive work environment.'" *Younis*, 610 F.3d at 362 (quoting *Grace v. USCAR*, 521 F.3d 655, 678 (6th Cir. 2008)). A hostile work environment claim may fail, however, when a plaintiff does not "allege[] any frequent, long-lasting, and severe incidents that could form the basis of a hostile work environment claim." *Mustafa v. Ford Motor Co.*, 691 F. Supp. 3d 796, 802 (E.D. Mich. 2023); *see also Grays v. Mayorkas*, No. 21-10526, 2021 WL 3207047, at *11 (E.D. Mich. July 29, 2021) (finding that explicitly racial comments, requirements to get permission to use bathroom, and offensive, aggressive touching over several years were sufficient to state a claim).

Alcodray's EEOC charge simply described two instances of discrimination when he applied for a storekeeper position at the Gus Harrison Correctional Facility, once when applying for a similar position at the Jackson facility, and once when applying for a similar position at the Women's Huron Valley Correctional Facility. But allegations of discrete acts of discrimination are not enough to put the EEOC on notice of a hostile work environment claim. *See Hayes v. Clariant Plastics & Coatings USA, Inc.*, 144 F.4th 850, 865 (6th Cir. 2025) ("'[T]he inclusion in an EEOC charge of a discrete act or acts, standing alone, is insufficient to establish a hostile-work-environment claim for purposes of exhaustion.' . . . That is because a hostile work environment claim cannot be 'reasonably expected to grow out of the charge' alleging only discrete acts of discrimination." (citations omitted)); *Harrison v. Michigan Dep't of Health & Hum. Servs.*, No. 22-12034, 2023 WL 4237580, at *15 (E.D. Mich. June 28, 2023) (dismissing hostile work environment claim "[b]ecause Plaintiffs' 2021 EEOC Charges address discrete acts and did not include any content that could reasonably be expected to prompt the EEOC to investigate a hostile work environment claim").

Because Alcodray's EEOC charge fell short of leading the EEOC to believe Alcodray was asserting a hostile work environment claim, he failed to exhaust his administrative remedy.

Overall, because of these exhaustion deficiencies, Defendants are entitled to dismissal of Count I (Title VII retaliation) and Count III (Title VII hostile work environment) under Rule 12(b)(6). Count II (Title VII disparate treatment) may

proceed only as to national origin related allegations and only for those allegations occurring after February 25, 2024.

### III. ELCRA claims

### A. Statute of Limitations

Unlike Title VII, ELCRA does not require administrative exhaustion. *Fuller v. Michigan Dep't of Transp.*, 580 F. App'x 416, 425 (6th Cir. 2014) ("[ELCRA] claims are not subject to the same administrative procedures as Title VII claims"). But it does require timely filing. ELCRA claims are subject to Michigan's three-year statute of limitations. *See* Mich. Comp. Laws § 600.5805(2). Defendants argue that because Alcodray filed this lawsuit on July 14, 2025, all of his ELCRA claims which arose more than three years earlier, i.e., by July 14, 2022, are time-barred. (ECF No. 8, PageID.57.)

The problem with this argument is that most of Alcodray's allegations pertain to adverse actions that occurred in 2024, well within the three-year cut off. And even his allegations that pertain to pre-July 2022 protected conduct, like the 2020 withdrawn grievance, could (in theory) support a timely retaliation claim so long as the retaliatory action occurred after July 2022. *See Kinsey v. Detroit Forming Inc.*, No. 282042, 2009 WL 103646, at *4 (Mich. Ct. App. Jan. 15, 2009) (explaining that it is the adverse action, not the protected activity, that triggers the statute of limitations period). So the statute of limitations does not provide a basis to dismiss any ELCRA claims.

13

## B. Individual Capacity

The next global issue with the ELCRA claims, Defendants maintain, is that they are really brought against Campbell in his official capacity and thus barred by sovereign immunity. (ECF No. 8, PageID.61.)

It is true that because MDOC is a state agency, it and its agents who are sued in their official capacity can assert a defense of sovereign immunity under the Eleventh Amendment. *See Harrison*, 2023 WL 4237580, at *6 ("[B]ecause a plaintiff's state law claim against an individual state official defendant in his or her official capacity is really a claim against the state that is protected by the Eleventh Amendment, Plaintiffs' ELCRA claims against the individual Defendants in their official capacities are . . . barred by the Eleventh Amendment and must be dismissed.").

But Defendants cannot re-write the complaint to create such an immunity defense. Whether a defendant is sued in his official or individual capacity is a matter of pleading. *See Kentucky v. Graham*, 473 U.S. 159, 165 (1985) (explaining that "[p]ersonal-capacity suits seek to impose personal liability upon a government official for actions he takes under color of state law," whereas official-capacity suits "generally represent only another way of pleading an action against an entity of which an officer is an agent." (citation omitted)). And Alcodray expressly pleads that Campbell "is being sued in his individual capacity for actions he took while acting in his individual capacity." (ECF No. 1, PageID.2.)

14

Defendants acknowledge (*see* ECF No. 14, PageID.108), and courts in this District have consistently held, that ELCRA claims against state agency employees in their individual capacity, if sufficiently pled, may proceed past the motion to dismiss stage. *See Ogden v. Michigan Dep't of Corr.*, No. 07-10111, 2009 WL 10680505, at *2 (E.D. Mich. Mar. 20, 2009) ("[T]he Eleventh Amendment does not bar suits for damages against state officials sued in their individual capacities. . . . Therefore, the Eleventh Amendment does not bar Plaintiff's ELCRA claims against the supervisory defendants in their individual capacities."); *Harrison*, 2023 WL 4237580, at *8 ("[B]ecause employers can be held liable under the [ELCRA], and because agents are considered employers, agents can be held liable, as individuals, under the [ELCRA]" (quoting *Elzovic v. Ford Motor Company*, 697 N.W.2d 851, 863 (Mich. 2005))); *Emery v. Michigan Dep't of C.R.*, No. 15-11467, 2016 WL 1090429, at *5 n.1 (E.D. Mich. Mar. 21, 2016) (granting motion to dismiss as to ELCRA claims against state agency employees in official capacity but allowing individual capacity claims to proceed); *Sanders v. Michigan Dep't of Corr.*, No. 10-15041, 2011 WL 1812741, at *2–3 (E.D. Mich. May 12, 2011) (same); *Vance v. Gen. Motors Corp.*, 233 F.R.D. 501, 503 (E.D. Mich. 2006) (explaining that unlike Title VII, where an individual supervisor cannot be held personally liable unless the supervisor otherwise qualifies as an "employer," under ELCRA a supervisor may be held personally liable for violations).

In other words, "because employers can be held liable under the [ELCRA], and because agents are considered employers, agents can be held liable, as individuals,

15

under the [ELCRA]." *Harrison*, WL 4237580, at *8 (E.D. Mich. June 28, 2023) (quoting *Elezovic v. Bennett*, 731 N.W.2d 452, 458 (Mich. Ct. App. 2007)); *see also Kloosterman v. Metro. Hosp.*, No. 22-944, 2023 WL 12081259, at *19 (W.D. Mich. Sept. 20, 2023) (same). Therefore, the issue is whether Alcodray has plausibly alleged that Campbell had "supervisory powers or authority to act" on behalf of MDOC with respect to the alleged discriminatory acts against Alcodray. *Harrison*, WL 4237580, at *8; *see also Masi v. DTE Coke Operations, LLC*, No. 06-11592, 2007 WL 2827845, at *7 (E.D. Mich. Sept. 27, 2007) (finding that certain defendants "were not 'agents' for purposes of the ELCRA, because they did not have the authority to act in that decision [not to rehire plaintiff]"); *Beaver v. Macomb Cnty.*, No. 21-10750, 2025 WL 975468, at *27 (E.D. Mich. Mar. 31, 2025) (holding that plaintiff had alleged sufficient facts "including making recommendations or providing input on hiring, firing, and discipline" such that "a jury could conclude that Macomb County granted Dr. Spitz supervisory authority over Beaver's employment"); *Droomer v. Flex-N-Gate Detroit, LLC*, No. 355117, 2021 WL 5019597, at *8 (Mich. Ct. App. Oct. 28, 2021) (although plant manager "had general supervisory authority and the power to hire and fire employees," he "was not an agent because the evidence does not establish that he had supervisory powers or authority to act on behalf of FNG Detroit with respect to the decision to terminate plaintiffs.").

Alcodray alleges that Campbell "was a supervisor with authority over [him]." (ECF No. 1, PageID.17.) Indeed, Campbell "was the Warden and supervisor at the facility to which Plaintiff was assigned." (*Id.* at PageID.2.) To support this

16

supervisory role, Alcodray further alleges that Campbell prohibited him from interviewing for a position within the facility in 2020 (*id.* at PageID.3), interfered with Alcodray's job applications (*id.* at PageID.5), and did not fairly consider Alcodray for positions (*id.* at PageID.17, 19). Thus, Alcodray can bring ELCRA claims against Campbell in his individual capacity. *See Mensah v. Caruso*, No. 10-13233, 2011 WL 4027307, at *6 (E.D. Mich. Sept. 12, 2011) (declining to dismiss ELCRA claims against MDOC warden defendants in their individual capacities because plaintiff alleged sufficient facts, including "control over Plaintiff's terms and conditions of employment," to infer defendants were agents of MDOC).

## B. Court of Claims Act

Relying on this mistaken assertion that Alcodray brought his ELCRA claims against Campbell in his official capacity, Defendants next argue that those claims should be dismissed because Alcodray did not comply with Michigan's Court of Claims Act (COCA). (ECF No. 8, PageID.67.) The COCA requires a plaintiff to submit a notice of intention to file a claim against the state to the clerk of the Court of Claims within one year of the date that his claims accrued. Mich. Comp. Laws § 600.6431(1). A plaintiff is required to submit the notice of intention even if the claim was not initiated against the state in the Court of Claims. *Christie v. Wayne State Univ.*, 993 N.W.2d 203, 206 (Mich. 2023). Because Alcodray has sued Campbell in his individual capacity, this notice provision does not apply.

17

## C. Retaliation Plausibility

Defendants' final argument is that Alcodray fails to plead a plausible retaliation claim (Count IV). (ECF No. 8, PageID.57.)

ELCRA's antiretaliation provision provides in relevant part that "a person shall not . . . [r]etaliate or discriminate against a person because the person has opposed a violation of this act, or because the person has made a charge, filed a complaint, testified, assisted, or participated in an investigation, proceeding, or hearing under this act." Mich. Comp. Laws § 37.2701(a). To succeed on this claim, a plaintiff must show "(1) that he engaged in a protected activity; (2) that this was known by the defendant; (3) that the defendant took an employment action adverse to the plaintiff; and (4) that there was a causal connection between the protected activity and the adverse employment action." *El-Khalil v. Oakwood Healthcare, Inc.*, 934 N.W.2d 665, 670–71 (Mich. 2019) (quoting *Rymal v. Baergen*, 686 N.W.2d 241, 256 (Mich. Ct. App. 2004)).

At the motion to dismiss stage, the question is whether Alcodray has plausibly alleged that he was blocked from securing a new MDOC position because of his prior complaints about Campbell. *See Kinney v. McDonough*, No. 21-1414, 2022 WL 223633, at *8 (6th Cir. Jan. 26, 2022) ("It is true that a complaint does not need to establish a prima facie case of retaliation or contain 'detailed factual allegations' in order to survive a motion to dismiss.") (internal citations omitted); *Lester v. Mayorkas*, No. 23-01271, 2025 WL 450499, at *8 (M.D. Tenn. Feb. 10, 2025) ("[A] plaintiff [with a retaliation claim] is not required to plead all elements of a prima

18

facie case to survive a motion to dismiss, he must meet the *Iqbal* general plausibility requirement[.]").

### 1. Protected Activity

An employee engages in protected activity when he opposes his employer's unlawful conduct or participates in a formal charge or investigation against his employer.[2] *Jackson v. Genesee Cnty. Rd. Comm'n*, 999 F.3d 333, 347–48 n.3 (6th Cir. 2021). Filing an EEOC complaint or internal grievance regarding unlawful conduct clearly constitutes protected activity. *Titus v. Verizon Wireless*, No. 10-469, 2012 WL 4089898, at *9 (S.D. Ohio Sept. 17, 2012) ("Filing an internal complaint of discrimination constitutes protected activity under Title VII."); *Bell v. United Parcel Serv., Inc.*, No. 16-2467, 2019 WL 4820450, at *7 (E.D. Mich. Sept. 30, 2019) ("It is undisputed that filing union grievances, internal employer complaints and a formal charge of discrimination with the EEOC are all activities protected by Title VII.").

So it is no surprise the parties agree that Alcodray's EEOC complaint, filed on December 21, 2024 and delivered to MDOC on January 3, 2025, constitutes protected activity under ELCRA. (ECF No. 8, PageID.59; ECF No. 1, PageID.2.) The problem for Alcodray, however, is that he does not allege any adverse action that occurred

---

[2] On this point, the Court considers Title VII retaliation cases in addition to ELCRA cases. *Cammon v. Blue Cross Blue Shield of Michigan*, No. 24-10422, 2025 WL 2201660, at *5 (E.D. Mich. Aug. 1, 2025) ("Because the analysis of retaliation claims under the ELCRA closely mirrors the Title VII analysis, the Court will . . . cite Title VII and ELCRA case law interchangeably.").

*after* he made this complaint, Thus, he cannot plausibly plead that his EEOC complaint was the cause of his inability to secure a new position.

Alcodray resists this conclusion by contending that he engaged in protected activity before the December 2024 complaint. (ECF No. 12, PageID.90.) He points to his (later withdrawn) grievance against Campbell in 2020, an informal complaint to an unidentified business manager, and his question to Campbell asking if he was blocked from jobs because he was Lebanese. (*Id.* at PageID.96.) But a closer look at the allegations of his complaint concerning the ELCRA retaliation claim show that he only identifies the EEOC complaint and the Campbell comment as protected conduct. (ECF No. 1, PageID.17.) So the Court only considers those two events.[3] *See Gentherm, Inc. v. Sargent & Greenleaf, Inc.*, 797 F. Supp. 3d 755, 759 (E.D. Mich. 2025) (citing *Weiner v. Klais & Co., Inc.*, 108 F.3d 86, 88 (6th Cir. 1997) ("Ordinarily, the court may not consider matters outside the pleadings when deciding a Rule 12(b)(6) motion to dismiss.").

As the Court has addressed the EEOC complaint, that leaves only the issue of whether Alcodray engaged in protected activity when he asked Campbell if he was being blocked from jobs "because he was Lebanese." (ECF No. 1, PageID.6.) In

---

[3] Even if Alcodray had pled the withdrawn grievance from 2020, his complaint contains no allegations causally connecting that complaint to events four years later in 2024. Same with the business manager allegation. He does not allege any facts to show that Campbell knew about the comment to the unidentified business manager or how it prompted Campbell to thwart his job prospects. So neither of these allegations plausibly support a retaliation claim. *Kinney*, 2022 WL 223633, at *7 ("A plaintiff fails to meet the causation requirement if the complaint 'does not allege any facts to support a causal link between her claimed protected activities and her [adverse employment actions].'") (internal citation omitted).

*Hackney v. LaFontaine Chrysler Dodge Jeep Ram of Clinton, Inc.*, No. 22-12612, 2024 WL 4270967, at *5 (E.D. Mich. Sept. 23, 2024).the court found that asking a manager, "Do you know I'm Lebanese" was an "acceptable tactic to convey opposition" to the manager's allegedly discriminatory remark. *Id.* Curiously, Defendants rely on this case. They argue that "Alcodray's allegations are similar" and that "[i]f the plaintiff in *Hackney* did not engage in a protected activity in such context, then Alcodray's statement on one occasion ("Is it because I'm Lebanese?"), especially without any contextual allegations of when or why the comment was made, does not qualify as protected activity." (ECF No. 8, PageID.60; ECF No. 14, PageID.107.)

But *Hackney* found the comment was protected conduct. Ultimately, the *Hackney* court dismissed plaintiff's retaliation claim for failure to prove the cat's paw theory of liability. *Hackney*, 2024 WL 4270967, at *5. But that is not a basis to dismiss Alcodray's claim on the face of the complaint. So while the Court has doubts that Alcodray's question to Campbell is truly protected conduct, without any argument from Defendants other than reliance on *Hackney* (ECF No. 8, PageID.60; ECF No. 14, PageID.107), the Court will not dismiss the claim now on this basis.

Alcodray alleges he made this comment to Campbell around the same time his various job applications were being rejected. So taking the allegations as true, Alcodray has plausibly alleged that this protected activity was known to Campbell and was the cause of his rejections. *See Dye v. Off. of the Racing Comm'n*, 702 F.3d 286, 306 (6th Cir. 2012) (explaining that causation can be satisfied "where the adverse

21

employment action occurred within a matter of months, or less, of the protected activity.").

In sum, Alcodray's ELCRA retaliation claim based on the comment to Campbell in 2024 (Count IV) as well as the ELCRA claims for disparate treatment and hostile work environment claims (Counts V and VI) survive Defendants' motion to dismiss.

## IV. Conclusion

For the foregoing reasons, the Court GRANTS IN PART and DENIES IN PART Defendants' partial motion to dismiss (ECF No. 8). Counts I and III are dismissed. Count II, the disparate treatment claim under Title VII as to MDOC, may proceed only on national origin discrimination and only for allegations occurring after February 25, 2024. Counts IV, V, and VI, the ELCRA claims against Campbell in his individual capacity, survive at this stage.

IT IS SO ORDERED.

Dated: July 9, 2026

s/Laurie J. Michelson
LAURIE J. MICHELSON
UNITED STATES DISTRICT JUDGE